O

# United States District Court
# Central District of California

| | |
|---|---|
| SUTRA BEAUTY, INC, a California corporation,<br><br>              Plaintiff,<br><br>    v.<br>CARLOS SANTINO SANCHEZ DURAN, an individual, A/K/A CARLOS SANTINO, A/K/A GENOVEVA BAFFANO, A/K/A ANGIE BUFFANO, D/B/A ANGEL BEAUTY SUPPLY;<br> and DOES 1–20, inclusive,<br><br>              Defendants. | Case No. 2:18-cv-03768-ODW(SSx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT [29], DENYING LIQUIDATED DAMAGES, DENYING ATTORNEYS' FEES, AND GRANTING COSTS** |

## I.    INTRODUCTION

Plaintiff Sutra Beauty, Inc. moves for default judgment against Defendant Carlos Santino Sanchez Duran. (ECF No. 29.) For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Entry of Default Judgment, **DENIES** Plaintiff's request for liquidated damages and attorneys' fees, and **GRANTS** costs in the sum of $460.[1]

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     FACTUAL BACKGROUND

Sutra Beauty ("Sutra") is a manufacturer and distributor of beauty products. (Compl. ¶ 7, ECF No. 1.) On or about January 25, 2018, Sutra entered into a license agreement ("Agreement") with Carlos Santino Sanchez Duran ("Duran") allowing him to sell Sutra's products at his place of business. (*Id.* ¶ 8; *id.* Ex. A ¶ 1.1.) The Agreement strictly prohibits resale of Sutra's products online. (*Id.* ¶ 9; *id.* Ex. A, ¶ 1.2.) The license agreement also includes a liquidated damages clause granting Sutra $100,000 in the event of a breach by Duran. (*Id.* ¶ 18; *id.* Ex. A ¶ 4.1.) On or about April 16, 2018, Sutra discovered that Duran was selling its products online, through Amazon.com, Squareup.com, and Facebook.com. (*Id.* ¶ 11.)

On May 4, 2018, Sutra sued Duran for (1) breach of contract, (2) unjust enrichment, (3) statutory and common law unfair competition and business practices, (4) negligent interference with an economic relation, and (5) fraudulent misrepresentation. (*See id.* ¶¶ 16–46.) Through its Complaint, Sutra requested various monetary and injunctive relief, including liquidated damages of $100,000 and attorney's fees and costs. (*Id.* Prayer for Relief.) Duran did not respond to the Complaint, and the Clerk entered default on June 15, 2018, upon Sutra's request. (ECF No. 17.) Sutra moved for default judgment against Duran, seeking $100,000 in liquidated damages and $6,060 in attorney's fees and costs, which the Court denied without prejudice due to various deficiencies in Sutra's first motion. (1st Mot. for Default J. ("1st Mot."), ECF No. 21; Order Denying 1st Mot., ECF No. 23.) Sutra now attempts to remedy the deficiencies in its original motion and again seeks default judgment against Duran, $100,000 in liquidated damages, and $6,060 in attorney's fees and costs. (2d Mot. for Default J. ("2d Mot."), ECF No. 29.)

## III.     LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). Fed. R. Civ. P. 55(b). Before a court can enter a default judgment against a defendant, the plaintiff

must satisfy the procedural requirements set forth in FRCP 54(c) and 55, as well as Local Rules 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1, 55-2. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and that (5) the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "[A] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002). In exercising discretion, a court must consider several factors (the "*Eitel* Factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the [FRCP] favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Generally, after the Clerk enters default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

Sutra has complied with the relevant procedural requirements and has established that the *Eitel* factors favor entry of default judgment on certain of its claims. However, although default judgment is appropriate, the amount of liquidated damages remains disproportionate, unreasonable, and unsupported by the record.

3

## A. Procedural Requirements

Sutra has complied with the relevant procedural requirements for entry of default judgment against Duran by submitting a declaration which states: (1) the Clerk entered default against Duran; (2) the default was entered on the original Complaint filed on May 4, 2018; (3) Duran is not an infant or incompetent person; (4) Duran is not covered under the Servicemembers Civil Relief Act; and (5) although Duran has failed to appear, Sutra "is serving" Duran with the Motion for Entry of Default Judgment. (2d Mot. 4–5; Decl. of Rea Stelmach ("Stelmach Decl.") ¶¶ 3, 4, 5, 19, ECF No. 29-1.) Therefore, Sutra has satisfied the requirements of FRCP 54(c) and 55, as well as Local Rule 55-1.

## B. *Eitel* Factors

Sutra clarified in its second motion that it seeks entry of default judgment as to each of its five causes of action against Defendant. (*See* 2d Mot. 6; Compl. ¶¶ 16–46.) The Court finds the *Eitel* factors weigh in favor of entering default judgment as to Sutra's causes of action for breach of contract and fraudulent misrepresentation.

### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. Duran has failed to appear or participate in this action. Absent entry of default judgment, Sutra is without recourse to recover on Duran's breach of the license agreement.

In denying Sutra's first motion, the Court expressed concern that Sutra had asserted damages only vaguely and failed to otherwise articulate harm. (Order Denying 1st Mot 4.) In its second Motion, Sutra more sufficiently describes the harm it has suffered, stating that, "Defendant is selling BRANDS at a discounted rate, which is interfering with Plaintiff's online business. Defendant is harming Plaintiff's business

by selling the same products on the same sites as Plaintiff, but at a much cheaper price." (2d Mot. 5.) Additionally, Sutra alleges that "Consumers are then purchasing Plaintiff's products from Defendant's site, instead of from Plaintiff, and past consumers are returning their purchases in order to purchase from Defendant instead." (*Id.*) The non-appearance by Duran leaves Sutra without a remedy, and Duran is undercutting Sutra's business and sales by his conduct in a way that was anticipated by the terms in the licensing agreement. Accordingly, this factor weighs heavily in favor of default judgment.

### 2. Substantive Merits & 3. Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (quoting *PepsiCo*, 238 F. Supp. 2d at 1175). To weigh these two factors, the Court must evaluate the merits of each of Sutra's five claims.

Breach of Contract

A breach of contract action in California requires a plaintiff to establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).[2]

Sutra has alleged sufficient facts to establish each of the requisite elements for a breach of contract claim. First, Sutra alleged the existence of a valid contract, the license agreement. (Compl. ¶ 8.) Second, although Sutra did not specifically allege its performance under the licensing agreement, it alleged facts indicating that it provided Duran with beauty products for sale at his place of business in accordance with the

---

[2] The licensing agreement between the parties contains a choice of law clause electing California law to govern the agreement. (*See* Compl., Ex. A § 5.) As such, California law governs the breach of contract claim. Further, a federal court exercising diversity jurisdiction applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). (*See* Compl. ¶ 4 (alleging diversity jurisdiction under 28 U.S.C. § 1332).)

5

license agreement's terms. (*Id.* ¶ 11; Stelmach Decl., Ex. A.) Third, Sutra alleged that Duran breached the license agreement by selling Sutra's products online. (Compl. ¶ 11.) Finally, although the allegation is bare, Sutra alleged resulting damages in that Duran's "violation did harm to [Sutra] and their relations to other vendors and others." (*Id.* ¶ 17.) Accepting as true the well-pleaded factual allegations in the Complaint, Sutra has stated a claim for breach of contract.

Unjust Enrichment

Generally, California law does not permit a standalone cause of action for unjust enrichment. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). "However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit . . . The return of that benefit is the remedy typically sought in a quasi-contract cause of action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks omitted). Regardless, an unjust enrichment claim must fail if the parties are bound by a valid express contract that defines the parties' rights. *Durell*, 183 Cal. App. 4th at 1370; *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). "When the parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996).

Here, Sutra cannot prevail on a separate cause of action for unjust enrichment because the Parties entered into a valid express contract which covers the subject matter of this action. Sutra states, "[t]he second cause of action for unjust enrichment alleges Defendants [sic] gained a benefit by his participation in the Agreements and retained an unjust enrichment when he violated the Agreements to Plaintiff's detriment." (2d Mot. 6.) The license agreement explicitly prohibits resale of Sutra's products online and provides for liquidated damages in the event of a breach by Defendant. (Compl. ¶¶ 9,

18, Ex. A, ¶¶ 1.2, 4.1.) Therefore, an express contract exists that defines Sutra's and Duran's rights. Additionally, Sutra expressly acknowledges the existence of the license agreement where it states, "All causes of action arise from and relate to [the license agreement] and subsequent breach of this Agreement." (2d Mot. 6.) Accordingly, Sutra's unjust enrichment claim fails as a matter of law and Sutra is not entitled to default judgment on this claim.

<u>Unfair Competition and Business Practices</u>

Sutra also alleges a claim for Unfair Business Practices in violation of California B&P Code section 17200. California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Conduct is "unfair"[3] under the UCL when it significantly harms competition. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

Sutra has not alleged sufficient facts to establish a violation of the UCL. In its Complaint, Sutra states "Defendants' wrongful breach of the AGREEMENTS and their unfair advantages at Plaintiff's expense is in violation of, among other things, California Business and Professions Code §§ 17200 et seq." (Compl. ¶ 28.) This conclusory allegation is inadequate to support Sutra's claim. Sutra attempts to remedy this deficiency through its second motion, which states, "Defendant is selling BRANDS at a discounted rate, which is interfering with Plaintiff's online business. Defendant is harming Plaintiff's business by selling the same products on the same sites as Plaintiff, but at a much cheaper price." (2d Mot. 5.) "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The facts alleged

---

[3] In the Complaint, Sutra appears to allege three different prongs of section 17200: "Defendants has been, and is engaged in 'unlawful, unfair, or fraudulent business practices . . .' in violation of §§ 17200 et seq., of the California Bus. & Prof. Code." (Compl. ¶ 27.) However, Sutra clarifies the basis of Duran's liability under section 17200 in the second Motion, asserting: "Defendant received an unfair advantage at Plaintiff's expense when he violated the Agreements in violation of B&P §§ 17200 et seq." (2d Mot. 6.) As such, the Court analyzes whether Sutra sufficiently alleges that Duran's conduct violated the "unfair" prong of section 17200.

7

in the Complaint do not demonstrate that Duran is harming competition. Accepting as true the well-pleaded factual allegations in the Complaint, Sutra has not stated a claim for violation of the UCL. As such, Sutra is not entitled to default judgment on this claim.

Negligent Interference With An Economic Relation

Sutra also alleges a cause of action for "negligent interference with an economic relation." The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that:

> (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

*Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078 (2007). Sutra fails to state a claim for negligent interference with prospective economic advantage because it has failed to allege these elements. For example, Sutra fails to satisfy the second element because it has not adequately shown that Duran knew of any specific economic relationship between Sutra and a third party. Sutra alleges "Defendants knew or should have known about these relations." (Compl. ¶ 32.) Conclusory allegations such as this are not accepted as true, and even if it were, an allegation that Duran "knew or should have known" about unspecified relationships does not satisfy the requirement that Duran "knew of the existence of the relationship."

As Sutra has failed to allege each of the required elements, Sutra is not entitled to default judgment on the claim for negligent interference with an economic relation.

Fraudulent Misrepresentation

Under California law, to establish a claim for fraud, Sutra must prove: "(1) misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Bank of the W. v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477 (9th Cir. 1994) (quoting *Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102, 1111 (1987)).

Additionally, under Federal Rule of Civil Procedure 9(b), "an allegation of 'fraud or mistake must state with particularity the circumstances constituting fraud.'" *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 415–16 (C.D. Cal. 2012) (quoting Fed. R. Civ. P. 9(b)). This heightened pleading standard requires that, "when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Specifically, the plaintiff must allege "the who, what, when, where, and how" of the fraudulent activity. *Id.* Yet, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff has met all five elements for a claim of fraudulent misrepresentation under the heightened pleading standard of Rule 9(b).

Sutra has met the first element, misrepresentation, by alleging that Duran represented that he,

> was the sole member of the business engaged by Plaintiff when in reality Defendant had created false aliases and personas which were intended to sell the SUTRA products in violation of the AGREEMENTS . . . [and Defendant's actions] show a pattern of intentionally violating the agreements signed by Defendants and Plaintiff such that it is clear that Defendants never intended to abide by the terms of the AGREEMENTS and induced Plaintiff into signing the AGREEMENTS by misrepresenting Defendants' willingness to abide by the terms of the AGREEMENTS.

(Compl. ¶¶ 38, 40.)

Sutra has met the second and third elements, knowledge of falsity and intent to induce reliance, by alleging that,

> Defendants knowingly and intentionally misrepresented the identity of the licensee by omitting and creating false aliases and persons in an effort to circumvent the AGREEMENTS. Defendants knowingly and intentionally misrepresented their intention to abide by the terms of the AGREEMENTS. The representations, though unknowing [sic] to Plaintiff were false, were material inducements of Plaintiff to sign the AGREEMENTS and were intended by Defendants for Plaintiff to rely on.

(Compl. ¶¶ 42–44.)

Sutra has met the fourth element, justifiable reliance, by alleging that "Plaintiff reasonably relied on the representations, to their detriment and substantial harm." (Compl. ¶ 45.) Finally, Sutra has met the fifth element, resulting damage, by alleging that it "has suffered injury and damages and has lost income and/or property as a result of Defendants' fraudulent misrepresentation in an amount to be proven at trial." (Compl. ¶ 46.) Accepting as true the well-pleaded factual allegations in the Complaint, Plaintiff has stated a claim for fraudulent misrepresentation.

Sutra has stated a claim on which it may recover only as to its first and fifth causes of action. As such, the second and third *Eitel* factors favor default judgment on Sutra's claims for breach of contract and fraudulent misrepresentation.

### 4. Amount at Stake

The fourth *Eitel* factor balances the amount of money at stake with the "seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471. The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's action." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Sutra seeks $100,000 in liquidated damages. (2d Mot. 8.) The Court previously found this sum disproportionate to the harm alleged, and Sutra's second Motion fails to

alter that conclusion. Sutra argues that each of its wholesale accounts purchases between $3,000 and $5,000 in Sutra products per month and that some of its wholesale customers have threatened to stop carrying Sutra's product line. (*See id.*; Ben-David Decl. ¶¶ 3, 5, 6.) Yet Sutra fails to indicate that it has lost any wholesale accounts due to Duran's breach or otherwise link a value to Sutra's harm. The Court declines to speculate as to Sutra's actual harm or its relation to the requested $100,000 in liquidated damages. Sutra has not adequately alleged or substantiated that the amount at stake, $100,000, is reasonable or proportionate in relation to Duran's conduct or Sutra's actual harm. Consequently, this factor weighs against entry of default judgment.

### 5. Possibility of Dispute

The fifth *Eitel* factor considers the possibility that material facts are in dispute. *PepsiCo*, 238 F. Supp. 2d at 1177. Because the allegations in Sutra's Complaint are presumed true, Duran's failure to appear in this action results in a finding that "no factual disputes exist that would preclude entry of default judgment." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014). Accordingly, this factor favors entry of default judgment.

### 6. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that a defendant's default is the result of excusable neglect. *PepsiCo,* 238 F. Supp. 2d at 1177. No facts before the Court indicate that Duran's default is due to excusable neglect. Plaintiff served its Complaint on Duran on May 21, 2018, and filed a Proof of Service on June 11, 2018. (Proof of Service, ECF No. 14.) Sutra also mailed its first Motion for Default Judgment to Duran via First Class Mail on July 24, 2018. (1st Mot. Proof of Service, ECF No. 21-3.) Additionally, Sutra also mailed its second Motion for Default Judgment to Duran via First Class Mail on November 27, 2018. (2d Mot. Proof of Service, ECF No. 29-4.) Duran thus was on notice and failed to respond. No facts indicate the possibility of excusable neglect. As such, this factor favors entry of default judgment.
///

*7. Policy Favoring Decisions on the Merits*

"[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, where the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Duran failed to appear or otherwise respond, a determination on the merits is impossible. Accordingly, this factor does not preclude entry of default judgment.

The first *Eitel* factor weighs heavily in favor of default judgment; the second and third *Eitel* factors favor of default on Sutra's causes of action for breach of contract and fraudulent misrepresentation; the fourth *Eitel* factor weighs against default judgment; and the fifth, sixth, and seventh *Eitel* factors favor default judgment. On balance, the *Eitel* factors support entry of default judgment on Sutra's first and fifth causes of action. As such, the Court **GRANTS** Sutra's Motion for Default Judgment as to Sutra's causes of action for Breach of Contract and Fraudulent Misrepresentation.

**C. Damages**

Through its second motion, Sutra seeks $100,000 in liquidated damages, $5,600 in attorney's fees, and $460 in costs. (2d Mot. 12.)

                    *1. Liquidated Damages*

The Court previously found the liquidated damages provision disproportionate to Sutra's alleged damages, and Sutra's second Motion provides no basis to alter that conclusion.

A liquidated damages provision is considered valid unless "the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). Liquidated damages are improper where they "[bear] no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998). Where

liquidated damages are disproportionate to the anticipated actual damages, they are considered an impermissible penalty. *Id.* The question of whether a liquidated damages clause is enforceable, or an unenforceable penalty, is a question of law for the Court. *See Dollar Tree Stores Inc., v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1071 (N.D. Cal. 2012) (citing *Harbor Island Holdings v. Kim*, 107 Cal. App. 4th 790, 794 (2003)).

Sutra requests $100,000 in liquidated damages under the Agreement. With its second Motion, Sutra submitted a declaration that each of its wholesale customers purchase between $3,000 and $5,000 of products per month and that some customers have threatened to or have stopped purchasing Sutra's products. (*See* Ben-David Decl. ¶¶ 3, 5, 6.) According to Sutra, the loss of "just a couple customers due to Defendant's low online prices easily causes Sutra to lose more than $100,000 in sales." (*Id.* ¶ 5.) However, Sutra fails to connect the damages it may suffer in losing wholesale customers to the sum of $100,000 in liquidated damages. Sutra does not indicate how many wholesale customers it has, how many have stopped or threatened to stop purchasing, or how, under the circumstances that existed at the time of entering the Agreement, the figure of $100,000 bore a reasonable relationship to the range of harm that Sutra might have reasonably anticipated. The gross disparity between $3,000–$5,000 and $100,000 demonstrates no reasonable relationship and Sutra fails to close the gap. Such a significant disparity indicates that the liquidated damages provision operates as a penalty and is unenforceable. *See Dollar Tree Stores*, 875 F. Supp. 2d at 1073 (finding unenforceable a liquidated damages provision that "bears no rational relationship to the actual damages.")

Because the liquidated damages provision is disproportionate and bears no reasonable relationship to anticipated damages, the Court **DENIES** Plaintiff's request for $100,000 in liquidated damages.

### 2. Attorneys' Fees and Costs

Sutra asks the Court to award $5,600 in attorney's fees associated with this Motion. (2d Mot. 12.) Local Rule 55-3 provides that reasonable attorneys' fees are

calculated according to a schedule based on the damages amount. Sutra calculated its fee request according to the fee schedule, assuming the amount of damages would be $100,000 in liquidated damages. *See* L.R. 55-3 ("$50,000.01–$100,000 . . . $3600 plus 4% of the amount over $50,000.") Because the Court finds the liquidated damages provision unenforceable, no damages are awarded. The schedule in Local Rule 55-3 provides for no fee award when the base damages are zero. *See id.* Accordingly, the Court **DENIES** Sutra's request for fees.

Sutra also seeks to recover costs in the amount of $460.00, which includes the $400 filing fee and $60 to serve the Complaint on Defendant. (Stelmach Decl. ¶ 21.) These costs are reasonable and recoverable, L.R. 54-3.1, 54-3.2, and thus the Court **GRANTS** Sutra's request for costs and awards them in full.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Sutra's Second Motion for Entry of Default Judgment only as to the causes of action for breach of contract and fraudulent misrepresentation. (ECF No. 29.) The Court **DENIES** Sutra's request for liquidated damages and attorneys' fees with prejudice. The Court **GRANTS** Sutra's request for costs in the sum of $460.

**IT IS SO ORDERED.**

February 15, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

14